DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The Medina County Court of Common Pleas, Domestic Relations Division, denied the motion of Kim Bowen (Kim) for a modification of spousal support owed to his ex-wife, Susan Bowen (Susan). He has appealed from the denial of that motion.
Kim has assigned as error that the trial court abused its discretion by failing to modify the spousal support.
 I
In 1995, the Bowens initiated court proceedings to end their marriage. On December 13, 1996, the trial court issued an order granting the couple a divorce. In its "Findings and Order: Property Division," journalized February 5, 1997, the trial court explicitly retained jurisdiction to "modify the amount or terms of this spousal support order * * * upon a change of circumstances of a party, which includes, but is not limited to, any increase or involuntary decrease in the parties' wages, salary, bonuses, living expenses, or medical expenses. O.R.C. § 3105.18(E)(1), (F)."
Almost immediately, Kim moved for a reduction in spousal support. On May 21, 1997, as part of the order allocating parental rights and responsibilities, the trial court decreased the amount of support Kim owed to Susan. Both parties appealed from the May 21, 1997 order. Bowen v. Bowen (Feb. 9, 1999), Medina App. Nos. 2720-M and 2733-M, unreported.
On May 21, 1998, Kim filed a second motion to modify the spousal support he owed. Kim contended that his circumstances were substantially changed because the couple's oldest son, Christopher, "has elected to attend college at Hiram College," at an estimated cost of approximately $23,000 per year. In addition, Kim asserted that he and Susan jointly decided to place their daughter, Sarah, in an out-of-state private facility to address her need for "substantial and ongoing specialized care, at a cost of $30,000.00 annually." Finally, he offered that Susan could be earning substantially more than she was then earning.
On December 17, 1998, the trial court denied Kim's motion for a modification of spousal support, indicating that "the Court will not indirectly substitute its judgment for theirs in allocating the cost or responsibility for the expense of their children by modifying the spousal support award. The parties are certainly aware of each other's income levels and expenses and they need to arrive at their own allocation of expenses for tuition for Sarah and Christopher."
On February 9, 1999, this court reversed the May 1997 modification of spousal support. Bowen v. Bowen (Feb. 9, 1999), Medina App. Nos. 2720-M and 2733-M, unreported, at 10.
 II
A court that has maintained jurisdiction to modify spousal support, pursuant to R.C. 3105.18(E), must follow a two step process in order to modify that support. The court must find that there is a substantial change in circumstances of one or both parties, which was not reasonably contemplated at the time of the prior order. Leighner v. Leighner (1986), 33 Ohio App.3d 214,215. If the court finds that there has been an unanticipated substantial change, it then proceeds to the question of whether it is appropriate to modify the current spousal support. In doing so, the court must determine whether, in light of the changed circumstances, an award is appropriate and reasonable. See id; R.C. 3105.18(C)(1). The court's discretion in answering those two questions is guided by consideration of the factors in R.C.3105.18(C)(1). See Leighner, 33 Ohio App.3d at 215.
In its December 1998 order, the trial court rejected Kim's motion to modify his spousal support. Kim has argued that "[a]fter determining that there was a substantial change in circumstances," the trial court should have determined whether support was necessary and, if so, what amount was reasonable and appropriate.[1] The trial court did not find that there was a substantial change in circumstances. Because it did not find a substantial change in circumstances, the focus of this court's review is to ensure that it was not an abuse of discretion for the trial court to fail to find that there had been a substantial change in circumstances.
The timing and status of prior orders in this case complicates the review of the December 1998 denial of the motion for modification. The trial court initially ordered spousal support as part of its February 1997 order. In its May 1997 order, it modified the earlier support order. While that was being appealed, Kim moved for a second modification. Before this court decided the appeal, the trial court denied the motion for a second modification. Because this court is charged with reviewing the discretion exercised by the trial court, its review is limited to the information that was before the trial court at the time it rendered judgment. McKay v. Cutlip
(1992), 80 Ohio App.3d 487, 490, fn. 3, citing App.R. 12(A). In December 1998, when the trial court decided not to alter the spousal support, it compared the purported changed circumstances against those that supported the existing May 1997 order.[2] SeeBingham v. Bingham (1983), 9 Ohio App.3d 191, 193.
The May 1997 modification was based on the Bowens' 1996 W-2's. At that time, Susan's income was $15,806 and Kim's 1996 income was $237,970. Susan testified at the November 1998 hearing that she expected her 1998 income to be considerably lower, because she did not work from the fall of 1997 through the fall of 1998.[3] According to Kim's testimony at the November 1998 hearing, he expected his 1998 income to be $274,176.
In May 1997, Christopher was seventeen years old and a junior in high school. It was reasonably foreseeable that he would be attending college in a year, and that Kim would no longer be the recipient of child support on Christopher's behalf.[4] Any change in circumstances attributable to Christopher was, or should have been, reasonably contemplated at the time of the May 1997 order.
With respect to Sarah, the May 1997 order allocating parental rights and responsibilities notes that, "it is acknowledged that Sarah is the subject of proceedings in the Juvenile Division and these determinations are conditioned upon any further action by the Medina County Juvenile Court." In the November 1998 hearing, Susan described Sarah's problems as being more than a year and a half in duration, a further indication that Sarah's problems were contemplated at the time of the May 1997 hearing. Kim indicated that Sarah remained on probation with the juvenile court until January 1998, when she was released with "a clean bill of health." Kim testified that before being released from probation, Sarah had "problems both with behavior and with drugs, and she went through a full ADDS program and went through — she actually was discharged from counseling from Northland." After a brief trouble free period in early 1998, Sarah began using drugs again and having other behavior problems. By spring 1998, Sarah was smoking marijuana, hanging out with inappropriate people, not responding to discipline in the home, and staying out late at night. During her attendance at one of the summer 1998 treatment programs, Sarah reportedly tried cocaine for the first time. In October 1998, she ran away briefly. Sarah had just entered a private, specialized facility at the time of the November 1998 hearing, which will cost the Bowens approximately $30,000 a year.
Sarah's difficulties, and the related expenses, are perhaps more extreme than her parents had hoped when the May 1997 spousal support award was made. The essential nature of her problems has not changed, however, and her struggles with them have run a fairly predictable course since then. It was not beyond reasonable contemplation that a thirteen year old child who had behavioral and drug problems would continue to have problems, particularly when they were already severe enough for her to be involved with the juvenile court system. It was also not beyond reasonable contemplation that those problems would increase over the course of the bitter divorce and post-divorce proceedings of her parents. In addition, it was also readily predictable that parents of a severely troubled daughter, whose combined income is approximately $280,000, would choose to send their daughter to a costly private residential treatment facility.
Even assuming that Sarah's problems were totally unexpected at the time of the May 1997 order, and assuming that Kim was responsible for all of Sarah's treatment expenses, netting his increased income against Sarah's increased expenses still leaves Kim with an income of $244,176. That is not a substantial change from the $237,970 income on which the May 1997 order was based.
Susan is currently earning less than she was in May 1997. Neither party asserted that her reduction in income was involuntary. Although a decrease in the recipient's income is normally raised by the recipient as part of a request for an increase, and countered by the obligor with the assertion that lower income was voluntary, the general principle is the same. A voluntary reduction in income is not generally considered a substantial change in circumstances. See R.C. 3105.18(F), which indicates that "a change in * * * circumstances * * * includes * * * any increase or involuntary decrease in the party's wages." (Emphasis added.)
The additional expenses attributed to Christopher's college education were, or should have been, anticipated at the time of the original award and do not constitute a substantial change in circumstances. With respect to Sarah, it is unfortunate when any child develops drug and behavioral problems. Sarah's problems were present, however, when the May 1997 spousal support award was made, and have followed a readily predictable course since then. In addition, even if the expenses were beyond ready contemplation and were Kim's sole responsibility, his net income after the expenses has still increased slightly. It was not an abuse of discretion for the trial court to decline to find that there was a substantial, uncontemplated, change in circumstances since the May 1997 order.
 III
Kim's assignment of error is overruled because it was not an abuse of discretion for the trial court to find that there was not a substantial and unanticipated change in the circumstances of either party. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________ WILLIAM R. BAIRD
FOR THE COURT SLABY, J. CONCURS
MAHONEY, J. CONCURS IN JUDGMENT ONLY
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] The Leighner case, relied on by this court and by Kim, was decided before R.C. 3105.18 was modified, effective Jan 1, 1991. The prior statute required that the trial court determine that spousal support was necessary. R.C. 3105.18(B), effective through Dec. 31, 1990. The statute currently in effect requires that the trial court award spousal support that is appropriate and reasonable. R.C. 3105.18(C)(1). The subsequent change in statute did not otherwise change the process for modifying spousal support. See Moore v. Moore (1997), 120 Ohio App.3d 488, 491. As suggested by Kim, the law requires that the trial court make a threshold determination that circumstances have changed, followed by balancing of the needs of the parties to determine what spousal support is reasonable and appropriate. Had the trial court found that the circumstances had substantially changed, it would not have been required to separately determine that spousal support was necessary before balancing the needs of the parties to determine an award that was appropriate and reasonable.
[2] The order in effect on the date of this review is the February 1997 order, because after the trial court denied the second request for a modification this court reversed the May 1997 modification of the February 1997 order.
[3] Susan's pay stub for the week ending October 17, 1998 was admitted into evidence. If she continued to work approximately the same hours through the end of the year her 1998 income would have been about $5000.
[4] At the time of the May 1997 order, all three children lived primarily with Kim. Because Kim was responsible for 94% of their support, and Susan was responsible for 6%, Susan was ordered to pay Kim $48.16 per month for each child.